**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION**

| | |
|---|---|
| TRACY LYNN REECE EISWERT IN HER OWN RIGHT, AS ADMINISRATRIX OF THE ESTATE OF SCOTT WALTER EISWERT, DECEASED, AND ON BEHALF OF HER MINOR CHILDREN, U. E. AND B. E. , | File No.: 2011-CV-__304_____ |
| AND | |
| CHRISTINA REECE, | |
| Plaintiffs, | |
| v. | |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

**COMPLAINT IN CIVIL ACTION FOR WRONGFUL
DEATH, MEDICAL MALPRACTICE, PAIN AND SUFFERING
AND OTHER DAMAGES**

## I. INTRODUCTION

1.   This action by Tracy Lynn Reece Eiswert, in her own right, as

Administratrix of the Estate of Scott Walter, and on behalf of her minor children, U.

E. and B.E, and by Christina Reece in her own right against Defendant United States

of America arises under the Federal Tort Claims Act 28 U.S.C. §§ 2671 et seq.  It is

an action for the wrongful death, medical malpractice, pain and suffering and other

damages resulting from Scott Walter Eiswert's death, caused by the negligence of

1

Defendant and/or its agents, servants, or employees.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 USC § 1346(b). Venue properly resides in this Court as Plaintiffs are/were residents of this district at the time all the events that led to this action occurred and Defendant owned, operated and controlled the Veterans Administration Medical Center as well as the Veterans Administration Service Center located in this district where the alleged malpractice occurred which led to Scott Walter Eiswert's death.

## IV. PARTIES

5. Plaintiff Tracy Lynn Reece Eiswert is an adult resident of 11380 SW 53rd Street, Webster, Florida 33597. She was the spouse of the late Scott Walter Eiswert.

6. Tracy Lynn Reece Eiswert was appointed Administratrix of the Estate of Scott Walter Eiswert on August 8th of 2009 by the Probate Court of Greene County at Greeneville, Tennessee.

7. Tracy Lynn Reece Eiswert resided at 834 Holly Creek Road, Greeneville, Greene County, Tennessee 37745 with her spouse, Scott Walter Eiswert, and two of her children, U. E. and B. E., at the time of the death of Scott Walter Eiswert and at all times while the events described in this Complaint took place.

8. Christina Reece was born on February 18, 1993 and became eighteen years old on February 18, 2011. Christina is the daughter of Plaintiff Tracy Lynn Reece Eiswert from a previous marriage. She resided with Tracy, Scott, and her

2

siblings on weekends, holidays and summers at the same Tennessee address cited in ¶ 4 at the time all events described in this Complaint took place.

9. Defendant, the United States of America, at all times herein mentioned, through the Veterans Administration, an agency of Defendant the United States, did and still does own and operate the James H. Quillen Veterans Administration Medical Center, located at Mountain Home, Tennessee 37684 ("VAMC"); the Veterans Administration Johnson City Veterans Center ("SVC"), located at 1615A Market Street, Johnson City, Tennessee; and the Veterans Administration Regional Office located at 110 9th Avenue, South Nashville, Tennessee 37203  ("DVA"), where the events which have given rise to this Complaint occurred.

10. At all times herein mentioned, VAMC, SVC, and DVA employed psychiatrists, physicians, nurses, orderlies and other personnel who, in doing or omitting to do all the things alleged herein, were acting within the scope of their employment and within the permission and consent of the United States of America and/or the Veterans Administration, an agency of the United States of America.

## IV.  FACTS

11. Scott Walter Eiswert, born on January 8, 1977, enrolled in the United States National Guard in July of 2001 for an eight-year period set to end in July of 2009.  He was called to active duty in 2003 and served in Iraq during Operation Iraqi Freedom in 2004 and 2005.  He was honorably discharged from active duty on November 25, 2005.

12. Immediately upon his discharge, on November 29, 2005 he sought help

3

from Trang Vuong, MD, an internal medicine physician who recommended counseling, stating that "In my opinion, Scott needs all the help he deserves to make transition back to civilian life a little bit more tranquil." Dr. Vuong recommended Scott seek help at the Nolachuckey-Holston Center in Greeneville, Tennessee.

13. Acting on the recommendation of Dr. Vuong, Scott sought help from Nolachuckey-Holston Center in Greeneville, Tennessee. He was seen by Ray White, LPC, MHSP, at the Nolachuckey Center in Greeneville, Tennessee (Frontier Health) from
December 21, 2005 through April 12, 2006.

14. The medical records of Nolachuckey-Holston Center in Greeneville, Tennessee reflect what is described in paragraphs 13 to 23, which follow in chronological order.

15. **12-21-2005.** In the Intake Form Scott reports that he was depressed felt only moderate interest and was experiencing acute insomnia.

16. **12-21-2005.** Scott reports being extremely stressed, hyper-vigilant, agitated and irritable.

17. **12-29-2005.** Mr. White suggests Scott talk to his physician about getting sleeping aids.

18. **01-09-2006.** Scott reports things are about the same: Sleep continues to be a problem and sleeping aids have not helped.

19. **01-30-2006.** Mr. White reports Scott looked more depressed.

20. **02-22-2006.** Mr. White collected information from Scott and prepared a Symptoms Check List. Mr. White noted that Scott was in a moderately depressed

4

mood, showing moderate irritability, moderate loss of interest or pleasure, and severe insomnia.

Mr. White also recommends individual psychotherapy for Scott.

21. **02-22-2006.** Mr. White, of Nolachuckey-Holston Center in Greeneville, Tennessee submits a letter to Scott's personal physician, Dr. Vuong, stating that Scott suffers from Acute Stress Disorder, and states that PTSD needs to be Ruled Out.

22. **02-23-2006.** Mr. White reports that Scott certainly appears to meet the criteria for PTSD. Scott reports increased stress at work, more distractibility. Mr. White feels that the distractibility might be related to the insomnia. Problems with spouse reported.

23. **03-21-2006.** Mr. White reports that client is more noticeable depressed. Scott reports that he can't stand his work schedule. Sleep continues to be poor. Mr. White cautions client that his depression is obviously severe and that he needs to see if he has any possible ways to decrease some of the stress.

24. **04-21-2006.** Scott has quit his job due to stress. He feels better as a result. However, because he no longer has a job he no longer has insurance and will not be able to continue attending counseling. Mr. White suggests Scott call in a few weeks.

25. **05-09-2006.** Mr. White writes a letter to the Department of Veterans Affairs, at the request of Scott, in which he states that "After meeting with Mr. Eiswert for several appointments, we have established a diagnosis of PTSD, per the Diagnostic & Statistical Manual Criteria." The letter is signed by Ray A. White, M.A., M.Div., LPC-MHSP, NCC, ACS.

26. **05-09-2006.** Following the diagnosis of Mr. White, Scott applies to the

5

Department of Veterans Affairs (hereinafter DVA) for Service Connected PTSD

disability. In the application Scotts describes a number of incidents in Iraq as

follows:

- Various Route Clearances - Roadside Bombs, Raids
- Convoy Escorts, all the Outside Wire Dangers and Stresses.
- Close Calls on Roadside Bombs
- Car Bombs and the Destruction they Cause, Including Civilian Fatalities (Body Parts)
- "I was on a Raid with Fellow Soldiers when they got Blown-Up by a Massive Roadside Bomb. (93 Dead, 1 Crippled)
- Living Conditions: One Bunker with 27 People in it.

7. **07-28-2006.** Scott is evaluated for PTSD at the James H. Quillen Veterans Administration Medical Center located at Mountain Home, Tennessee (hereinafter VAMC). The evaluator was Physician Patrick J. MacMillan. Dr. MacMillan admits that he did not have access to the records of Scott's private counselor at the time he made his evaluation of Scott. Dr. MacMillan admits he relied entirely on Scott's narrative to make his assessment and then concluded that "veteran has current diagnosis of depression, NOS. He does describe symptoms of Post Traumatic Stress Syndrome, however not enough to meet criteria."

8. **09-08-2006.** DVA denies Scott's application for Service Connected PTSD, explaining that Mr. Ray White who provided the diagnosis "does not specify which Diagnostic and Statistical Manual was used." The denial analysis also states that even though Scott provided "sufficient details concerning a stressor…" it "failed to provide dates of the incidents or names of any casualties." Allegedly, the denial is supported by the VA examination of July 28, 2006 as well.

9. **11-09-2006.** DVA receives additional service medical records from the Tennessee National Guard, re-opens the PTSD claim for service connected disability, and again denies the claim. The re-assessment of the claim once again does not mention having reviewed the medical records and/or the PTSD diagnosis of Mr. Ray White.

10. **01-10-2007.** Scott is seen by the physicians and nurses of VAMC. Author, Louie G, reports that Scott has been "battling feelings of depression. Experiences flashbacks, dreams, nightmares." Scott states that "his wife says that that is all I do, worry and think about it and I don't sleep, and gives me pain and ulcers." R.N. Richard Verhegge reports depression 3 Moderate (some tearfulness, no active suicidality, mild weight loss). Dr. Dianne L. Hansen, staff psychiatrist, reviews the case and states she concurs, with the exception of the Axis I diagnosis; she would use adjustment disorder with depressed mood, for now, "given that he is dating his current difficulties to his return from Iraq." Dr. Hansen notes some alcohol usage involved, necessitating his referral to the Dual Diagnosis Clinic, first, for

6

management. She further notes, "As far as rule out diagnosis, alcohol induced mood disorder, PTSD and alcohol need to be kept in mind. Dr. Henson/Dual Diagnosis clinic will assess the patient for appropriate clinic placement as he sees fit."

11. **01-10-2007.** VAMC author Kamran Hayel-Moghadam in a note discussed with and concurred by Psychiatrist Dr. Hansen assesses that Scott suffers from: Axis I: depression not otherwise specified; Axis II: Deferred; Axis III: GERD; Axis IV: Iraq War veteran, Marital problem; and, Axis V: Global Assessment of Functioning: 55. Treatment prescribed: Mirtazapine Tab 30mg one tablet per mouth at bedtime for depression, and to schedule appointment at Dual Diagnostic Clinic.

12. **01-11-2007.** VAMC Department of Primary Care sets appointments for Scott to be seen by a Primary Care Physician on 01-29-2007.

13. **01-29-07.** Scott is examined at VAMC, and the following notes are reflected in the medical records:

- Alcohol Screening. Drinks containing alcohol in past year, Two to four times per month.
- Pt. advised of nutrition counseling.
- PTSD Screen: Experiences so frightening, horrible, or upsetting that, IN THE PAST MONTH, you: Had nightmares or thought about it when you did not want: YES; Tried not to think about it or went out of your way to avoid situations that reminded you of it: YES; Felt Numb, detached from others, activities, or your surroundings: YES. Were constantly on guard, watchful, or easily startled: NO.
- Clinician Note—Hope, Lapsey G.: Veteran scheduled to see Dual Diagnosis Clinic on February 9. Patient took Remeron (Mirtazapine) prescribed on 01-10-2007 for 9 days but could not tolerate it. Notes that Pt tried Zoloft about a year before but could not tolerate as well.

18. **02-09-2007.** VAMC Consultation Note of Dual Diagnosis Clinic: Combat service significant effect. Increased marital and family problems. Increased irritability, low frustration tolerance, intolerant of crowds. Severe sleep problems less now. Saw frequent casualties, numerous combat situations, receiving mortar fire, fearing being killed every day. Developed numbness eventually, not fearing death. Intense stress within unit. One guy threatened to shoot him. Upon return, he was drinking. Seen at Nolachuckey MHC for a brief period. Diagnosis: A) PTSD; P) would recommend pt be referred for screening/intake PTSD.

19. **02-16-2007.** VAMC Telephone call medication refill request. Pt. needs something to stop smoking.

20. **02-28-2007.** VAMC Telephone calls, dealing again with smoking and desire to stop smoking. Requests nicotine patches previously offered to him.

21. **03-28-2007.** VAMC patient seen for evaluation and management of anger, irritability and temper outbursts. Referred by Dr. Don Henson. Iraq service description. Came under fire in Iraq and had IED go off on vehicle following behind. Close call. Saw civilians killed, including children, and also talking on the radio to

7

friends when they were killed during a RPG attack. He never fired a weapon or killed anyone. Under constant tension, did not know if he was coming back. He came to believe he was going to die. Currently reports extreme difficulty sleeping, nightmares, night sweats, hyper-vigilance, and "constantly scanning road during pizza delivery job." Has hyper-startle response, but better now with it. States "mind races" constantly. Under mental status exam patient reports: Guilt feelings; Loss; Isolation; Self Pity; Failure; Suspiciousness, Somatization, Complaints of pain; Obsessions; Indecisiveness.

    22. **03-28-2007**. VAMC's Jacob M. Whitener, MD, concludes his assessment as follows:

- Axis I: PTSD with disturbance of mood (dysphoria) - Pt has some adherence to prescribed medication, with continuing PTSD symptoms.
- Axis II: deferred
- Axis III: see above
- Axis IV: social/occupational/interpersonal relationship issues

Dr. Whitener reviews medical history and summarizes that patient could not tolerate Zoloft and Wellbutrin and that Lunesta has shown no effect. Dr. Whitener then prescribes Celexa at 20mg per day x 30 days, and then increased to 40 mg q day and to discontinue clonazepam. Patient agrees to trial of trazodone 50 mg to 100 mg for sleep - discussed effects/side effects, including potential for sedation/priapism and recommends that patient read pharmaceutical literature for further information.

    27. **03-28-2007.** VAMC's Dr. Whitener, MD, assesses suicide risk, concluding that the only stressor is the financial situation and that patient is not at risk for suicide.

    28. **05-31-2007.** VAMC Appointment with Jacob W. Whitener, MD, who expects will "verbalize decrease or absence of PTSD symptoms" compared to before initialization of treatment. Dr. Whitener summarizes 03-28-2007 interview results and then adds a paragraph with the following information: on pt's screening he was offered medications and agreed to trial Celexa and clonazepan. He started Celexa but

ran out about a week before appointment. He had an initial effect from clonazepan. He has been to training camp. Describes mood as little down. Believes he was less down and less irritable while on medication. Describes training camp as "pretty stressful." Problems with sleeping on bunk beds, which remind him of Iraq. Couple of nightmares recently. Walking in the middle of the night. Denies suicidal ideation/homicidal ideation but refers to past fleeting thoughts of suicide. States he would not do that to his children. Continues with hyper-vigilance.

29. **06-11-2007. VAMC**: upper lumbar pain reported by Veteran. He stopped wearing shoe inserts.

30. **06-18-2007.** Veterans Administration Johnson City Veterans Center (hereinafter "SVC"). Referred to SVC by VAMC. Pt has been diagnosed with the PTSD by the VAMC/ did not go into activities in Iraq because database was incomplete.

31. **06-22-2007.** VAMC author Traumatic Brain Injury (TBI) Screening. Veteran does not report TBI during OIF/OEO deployment. Pt. denies experiencing any TBI-related events during deployment.

32. **07-02-2007.** SVC reports continuing depression, anxiety, and problems managing his anger. He gets angry at the minimal amount of tips he gets from Pizza deliveries. Combat engineer served as the platoon Sergeant Driver. Was exposed to deceased civilians, including children. Vehicle in back blown-up by an IED. One other trauma: While talking to friend on the radio, an RPG killed his friend.

33. **07-16-2007.** SVC. Continues sleep problems and constantly on alert. He expresses he is doing better. He reiterates that he reached a point at which he thought

9

he did not care whether he lived or died. Relates incident in which he expected an IED to explode. His stomach was tight in this incident and he almost became sick, "just like it is now talking about it." That is when his attitude about living or dying changed. Note: Stable, able to talk of what may have been one of his traumas.

34. **07-20-2007.** SVC: Reports diagnosis as having PTSD. Patient complains of dysphoria, intrusive thoughts, hyper-vigilance, insomnia, avoidance of others and problems managing anger. Upon his return from Iraq his wife threatened to leave him if he did not seek help. That is why he went to the community MHC and subsequently entered PCT at the VAMC, where he was medicated and referred to the Vet Center for counseling. Note: Veteran with a diagnosis of PTSD.

35. **07-30-2007.** SVC: Veteran chronically tired and somewhat depressed. Wakes frequently through the night and at times finds it difficult to go back to sleep. Note: Depressed.

36. **08-24-2007.** Scott forwards VAMC Dr. Whitener's diagnosis of PTSD to the DVA, seeking reconsideration of denial of disability benefits. He also grants authority in his letter to contact SVC where he had been referred for counseling.

37. **08-27-2007.** SVC: Veteran relates continuing episodes of marked depression. He quit his job. He commented his wife would not talk to him about Iraq and did not know how to treat him. He was able to go into some traumatic material with the counselor and became very angry discussing what he saw/experienced in Iraq. Note: Continues to experience depression. Able to relate to affective material.

38. **09-12-2007.** SVC: His wife in attendance. He was able to relate that when he pictured the little girl dead in Iraq, he became sick. He went on to relate that he

10

tried to hold on to his anger, and eventually left the room and threw up. His wife was angry because he lied about smoking. He got upset again and said she lies to him. He was upset they moved to Tennessee and could not find a job. That is why he had joined the National Guard. He was upset he had to take medications and was defined as mentally ill. It was suggested to him that he talk to his psychiatrist about his medication issue.

39. **09-20-2007.** SVC to forward medical records to DVA.

40. **09-26-2007.** SVC: Veteran related he learned at the last session his wife was hiding something. He relates depression and anxiety. Relating to his claim (for PTSD disability) he said he had forgotten dates and names of the deceased in one of his stressors. Note: Stable, some depression.

41. **10-24-2007.** SVC: Mood fairly good. Concerned about finances. Note: mood Stable.

42. **11-02-2007.** DVA reports that they are still working on his request to reconsider service-connected for PTSD.

43. **12-19-2007.** SVC. Depressed and not sleeping. Denies suicidal ideation. Related his wife has a girlfriend and is staying downstairs with her while he and the children are living upstairs. He is devastated by this. He was invited to go to Florida with his wife to visit her family for Thanksgiving but he refused. Note: Depressed.

44. **02-04-2008.** DVA reconfirms prior denial of service-connected disability for PTSD. DVA basis: "Although we recognize your contentions and conceded the 2 rating decisions you have a diagnosis of PTSD, there is no objective evidence submitted from you that will allow the VA to attempt verification of the stressors

11

from research facilities."

45. **02-28-2008.** VAMC:  Veteran missed PTSP Auerbach clinic appointment date/time Feb. 28, 2008, 8:30.  "This was the last attempt to contact veteran, out of a maximum of three call backs within ten days,"  "PATIENT IS NOT HIGH RISK.  Comment:  Four attempts were made to call this veteran over 15 minutes and line was busy each time."

46. **03-25-2008.** VAMC:  Patient was called.  He states he was honorably discharged, does not wish to take any medications, and respectfully states he did not know about appointment today or he would have called.  He does not wish any further appts with PTSP and has all our numbers if needed.  Discussed with PTSP staff and no future appts will be scheduled unless he calls.

47. **05-16-2008.** Scott commits suicide.

48. **05-28-2008.** VAMC:  Tracy Eiswert, spouse of Scott Eiswert, meets with Melea K. Hunter of the VAMC to discuss Scott.  Tracy reports that his PTSD claim had been denied twice.  (In fact it had been denied three times, infra ¶s 26, 27 and 53).  "Randy of the VA Medical Center will investigate why claim was denied."  Discussion covered behavior of her husband clearly indicative of PTSD.  Tracy reports:

- Immediate behavior change after return from Iraq.
- Different man.  Not the same man before combat.
- (Before Iraq) he was very close to his children and stepchild, close family.
- After Iraq, constantly yelling and screaming at the children.
- Children scared of coming to him.
- Veteran would not talk to her about what happened in Iraq because he did not want her knowing of the bad things that were in his head.

12

- He did talk about, for example, knocking down doors, friends being killed, and one little girl who reminded him of his girls.
- Veteran reported to her he did try to get help from Dr. Whitener at the VAMC and Dick Shambaugh at the Veterans Center. Tracy reported that he did not feel like this helped him.
- The day he killed himself he was to pick up the girls from school.
- She reported the family would not go upstairs where he killed himself.
- Tracy stated she never thought he would do this, because of the girls, and has no idea how he got the gun.
- Tracy reported that his claim for PTSD denied twice. (In fact, three times. See infra ¶s. 26, 27 and 53.)

61. **08-13-2008.** DVA reverses itself and finds that Scott was entitled to service-connected PTSD disability, with an evaluation of 10%, retroactive to March 28, 2007. The basis for the reversal is that "Joint Records Research Memorandum received August 7, 2008 has confirmed stressor associated with duty in Iraq." DVA assigned the date of March 28, 2007 because that was the date at which the veteran was diagnosed with PTSD.

62. **08-26-2008.** DVA admits that the decision dated August 13, 2008 "was clearly and unmistakably in error" for failing to grant 50% evaluation for PTSD from an earlier effective date of February 9, 2007.

63. **10-08-2008.** DVA continues 50% disabled by PTSD retroactively to February 9, 2007, asserting that evidence does not show an increase in severity of the condition warranting a higher evaluation.

64. **04-22-2009.** DVA continues 50% disability connected to PTSD, retroactive to February 9, 2007. In addition, effective date for 10% evaluation for depression is assigned back to November 24, 2005.

65. **09-29-2009.** DVA receives appeal from the decision of 04-22-2009, filed by Attorney Benjamin D. Schuman.

66. **05-20-2010.** DVA modifies its findings, establishing 01-10-2007 as the retroactive date for depression and increasing depression evaluation retroactively to 50%, as of 01-10-2007.

67. **04-20-2010.** Dr. William B. Land, a well-regarded psychiatrist and neurologist with a long record of accomplishments in the medical field, including academic appointments, honors and publications, after an extensive review of the records, states unequivocally as follows, that in his opinion as an expert within a reasonable degree of medical certainty:

- That the failure by the Veterans Administration to assign service-connected disability for Scott's PTSD between July 28, 2006 and March 25, 2008 was a dereliction of duty by the Department of Veterans Affairs.
- That the failure of the Veterans Administration to assign a service-connected disability for Scott's PTSD between July 28, 2006 and March 25 of 2008 resulted in Scott's stoppage of treatment at any facility as of

13

March 25, 2008.
- That Scott Walter Eiswert received substandard medical care by the United States for his condition between July 28, 2006 and March 25, 2008.
- That the failure of DVA to assign a service-connected disability for Scott's PTSD between July 28, 2006 and March 25 of 2008 contributed to the substandard care Scott received by the United States for his condition.
- That the substandard care Scott received from the United States between July 28, 2006 and March 25, 2008 resulted in either/or/or both: a) the premature death of Scott on May 16, 2008; and/or b) a loss of chance greater than 90% for a different outcome. (For the extensive and complete analysis by Dr. Land see Exhibit-1 attached to this Complaint.)

73. On April 20, 2010 Plaintiff Tracy Lynn Reece Eiswert, on behalf of herself, the Estate of Scott Walter Eiswert and on behalf of her three minor children U. E., B. E. and Christina (a minor at the time), filed the claim asserted herein with the United States through its agent the Department of Veterans Affairs, per 28 USC § 2675, together with required Form 95 specifying a sum certain compensation, and supported by all the medical and other records of Scott related to his care by the United States as well as all other relevant records of his care, and the comprehensive testimony of Dr. William Land. (See Exhibit-1 attached to this Complaint.)

74. On May 20, 2010 the General Counsel of DVA requested Plaintiffs provide the following: a) medical releases for all treating physicians within and outside the United States facilities; b) medical records; c) itemized bills for all expenses incurred; d) employment records; e) employment history; f) income tax returns; g) any and all government compensation, if any; h) authenticated death certificate; i) medical and burial expenses; j) degree of support from the deceased to each named spouse and children; k) legal representation agreement.

75. The requested information and records were provided to DVA's General Counsel on July 2, 2010.

76. On September 17, 2010 DVA's General Counsel requested an expert analysis of Scott Walter Eiswert's loss of income, together with relevant documentation.

77. On October 4, 2010 Plaintiffs complied with DVA's request and forwarded to its General Counsel an expert analysis of Scott's loss of income, together with all relevant documentation as required by F.R.C.P. 26(a)(B). This expert report is attached to this Complaint herein as Exhibit-2.

78. On November 5, 2010 DVA denied the claims but suggested Plaintiffs could seek reconsideration of its decision from the Veterans Administration General Counsel in Washington within six months of the denial.

79. Plaintiffs sought the suggested request for reconsideration with the Office of the General Counsel of the Veterans Affairs Department on February 1, 2011.

80. The General Counsel of the Department of Veterans Affairs denied the

14

reconsideration request on April 19, 2011 and granted Plaintiffs six months from April 19, 2011 to file a claim in federal court under the FTCA against the United States.

   81. On May 10, 2011 the Court of Appeals of the Ninth Circuit held, in a class action complaint, that the:

> VA's failure to provide adequate procedures for veterans facing prejudicial delays in the delivery of mental health care violates the Due Process Clause of the Fifth Amendment, and that the district court erred when it found otherwise. *VETERANS FOR COMMON SENSE, et al., v. ERIC K. SHINSEKI et al., at pg. 7, 2011 U.S. App. LEXIS 9542.*

82. In preparation for the filing of this lawsuit and in consideration of Tenn. Code.

Ann. 29-26-121, Plaintiffs requested Dr. J. Sidney Alexander former Medical Director of the

Lakeshore Mental Health Institute located in Knoxville Tennessee to review the medical records

of Scott Walter Eiswert and to provide a *Psychiatric Expert Opinion* regarding the issues raised

in this Complaint.

   76.  Dr. J. Sidney Alexander conducted an extensive analysis of the

medical records as supplied to the Veterans Administration and concluded

unequivocally that in his opinion as an expert within a reasonable degree of medical

certainty:

- That the failure to adequately diagnose Mr. Eiswert's Post Traumatic Stress Disorder (PTSD) by the Department of Veterans Affairs, which in turn led the Department of Veterans Affairs not to assign a service-connected disability for Scott's PTSD between July 28, 2006 and March 25, 2008 was a dereliction of duty by the Department of Veterans Affairs.
- That the failure to adequately diagnose Mr. Eiswert's Post Traumatic Stress Disorder (PTSD) by the Department of Veterans Affairs, which in turn led the Department of Veterans Affairs not to assign a service-connected disability for Scott's PTSD between July 28, 2006 and March 25, 2008 resulted in Scott's stoppage of treatment at any facility as of March 25, 2008.
- That Scott Walter Eiswert received substandard medical care by the United States for his condition between July 28, 2006 and March 25,

15

2008.

- That the failure of DVA to assign a service-connected disability for Scott's PTSD between July 28, 2006 and March 25 of 2008 contributed to the substandard care Scott received by the United States for his condition.
- That the substandard care Scott received from the United States between July 28, 2006 and March 25, 2008 resulted in either/or/or both: a) the premature death of Scott on May 16, 2008; and/or b) a loss of chance greater than 90% for a different outcome. (For the extensive and complete analysis by Dr. J. Sidney Alexander see Exhibit-3 attached to this Complaint.)

# V. COUNTS
## COUNT I
### WRONGFUL DEATH AND/OR LOSS OF CHANCE
### NEGLIGENCE IN FAILING TO PROPERLY DIAGNOSE SCOTT WALTER EISWERT'S CONDITION BETWEEN JULY 28, 2006 AND MARCH 25, 2008 AND TO PROPERLY TREAT SCOTT WALTER EISWERT FOT HIS CONDITION WHICH LED TO HIS PREMATURE SUICIDE

82. Plaintiffs re-allege and incorporate as if fully set forth herein, by reference, all of the allegations of paragraphs one (1) through seventy-four (74).

83. Defendant, the United States of America, through its agents at VAMC, SVC, and DVA, hereinafter collectively Veterans Administration ("VA"), acted negligently and recklessly by the following acts or omissions:

a. Failure to diagnose and/or treat Scott Walter Eiswert's PTSD condition between July 28, 2006 and March 25, 2008;

b. Failure to provide adequate psychiatric help to Scott Walter Eiswert whenever he was on the premises and under the control of the VA between July 28, 2006 and March 25, 2008;

c. Failure of the VA's agents and employees to adequately consider the fact that Scott Walter Eiswert had been diagnosed as suffering from PTSD by a

16

reputable and competent medical center as early as May 9, 2006;

    d.   Failure of the VA to properly assign a PTSD disability for Scott Walter Eiswert on September 8, 2006 and November 9, 2006 even though a competent medical facility had provided a clear diagnosis of PTSD to the VA as early as May 5, 2006;

    e.   Failure of the VA to properly assign a PTSD disability for Scott Walter Eiswert on February 4, 2008 even after the VA itself had recognized the PTSD condition of Scott Walter Eiswert on March 28, 2007, June 18, 2007 and July 20, 2007;

    f.   Failure of the VA to assign and treat the PTSD condition of Scott Walter Eiswert by assigning his case to a qualified and competent psychiatrist for psychiatric treatment; and

    g.   Failure of the VA to have adequately trained personnel on duty, capable of knowing that Scott Walter Eiswert was in desperate need of treatment for his PTSD, given the knowledge the VA had at all times between July 28, 2006 and March 25, 2008 of Scott Walter Eiswert's condition.

84. The premature death of Scott Walter Eiswert on May 16, 2008 and/or his loss of chance for a more favorable outcome is directly attributable to Defendant's personnel and/or agents' negligence, carelessness, recklessness and lack of skill as described above.

85. As a further result of Defendant's negligence, carelessness, recklessness and lack of skill as outlined in this Complaint, Scott Walter Eiswert, because of his early death, lost thirty-seven years of earning capacity and his survivors were

17

deprived of the comfort, aid, assistance, services, counseling, guidance, solace and

financial contribution that they would have received from him during the remainder

of his natural life.  In addition, the survivors have incurred expenses for burial and

other out-of-pocket costs associated with Scott Walter Eiswert's funeral.

WHEREFORE, Plaintiff Tracy Lynn Reece Eiswert Administratrix of the Estate of Scott Walter

Eiswert, demands judgment in her favor and against the Defendant, the United States, for the

above-described damages, together with interests and costs.


**COUNT II**
**WRONGFUL DEATH AND/OR LOSS OF CHANCE**
**NEGLIGENCE - FAILURE TO PROVIDE PROPER TRAINING**
**OF PSYCHIATRISTS, PHYSICIANS, NURSES, ORDERLIES AND EMPLOYEES**

86. Plaintiffs re-allege and incorporate as if fully set forth herein, by

reference, all the allegations of paragraphs one (1) through seventy–eight (78).

87. Defendant was negligent, careless, and reckless, in failing to train its

psychiatrists, physicians, servants, agents, nurses, orderlies and employees under its

control to exercise proper skill in the professional treatment of Scott Walter Eiswert

in light of his presenting signs.

88. Defendant's psychiatrists, physicians, servants, agents, nurses, orderlies

and employees' acts and omissions with respect to Scott Walter Eiswert's medical

and psychiatric treatment demonstrated that the Defendant's psychiatrists, physicians,

servants, agents, nurses, orderlies and employees either lacked the skill, learning, and

ability to render the care and treatment required by Scott Walter Eiswert's clinical

presentation, and/or failed to use the skill, learning and ability which they did possess

in treating Scott Walter Eiswert.  Defendant's psychiatrists, physicians, servants,

18

agents, nurses, orderlies and employees' negligent acts and/or omissions included, but were not limited to, the following:

a. Failure to use due care, diligence and skill in treating the decedent, in light of his obvious signs and symptoms;

b. Failure to adequately and properly monitor decedent's condition;

c. Failure to ensure that decedent received the necessary treatment required for his condition, by failing to consult with proper specialists, such as professional psychiatrists, concerning his treatment;

d. Failure to order proper observation, evaluation and counseling which would have revealed the serious and life-threatening condition with which Scott Walter Eiswert was suffering;

e. Failure to provide adequate diagnostic tests for decedent's condition;

f. Failure to conform to the applicable standard of care in the treatment of decedent's presenting signs and symptoms; and

g. Failure to have adequately trained personnel capable of adequately diagnosing and treating Scott Walter Eiswert's condition between July 28, 2006 and March 25, 2008.

89. As a result of Defendant's negligence, carelessness, and recklessness in the training of their psychiatrists, physicians, servants, agents, nurses, orderlies and employees under their control, decedent was not provided proper care and suffered great physical and mental pain and anguish, anxiety reactions, bodily injury, severe shock to his nervous system and other systems of his body, which eventually, on May 16, 2008, led to his suicide.

19

90. As a further result of Defendant's psychiatrists, physicians, servants, agents, nurses, orderlies and employees' negligence, carelessness, recklessness and lack of skill, Scott Walter Eiswert because of his early death lost thirty-seven years of earning capacity, incurred expenses, and sustained severe, permanent, and painful injuries, resulting in premature death, depriving his survivors of the comfort, aid, assistance, services, counseling, guidance, solace and financial contribution that they would have received from him during the remainder of his natural life. In addition, the survivors have incurred expenses for burial and other out-of-pocket costs associated with Scott Walter Eiswert's funeral.

WHEREFORE, Plaintiff Tracy Lynn Reece Eiswert, as Administratrix of the Estate of Scott Walter Eiswert, demands judgment in her favor and against Defendant, the United States, for the above-described injuries, together with interests and costs.

### COUNT III
### WRONGFUL DEATH AND/OR LOSS OF CHANCE - NEGLIGENT SUPERVISION AND MONITORING OF HEALTH CARE PROVIDERS

91. Plaintiffs re-allege and incorporate, as if fully set forth herein, by reference, all of the allegations of paragraphs one (1) through eighty-three (85).

92. Defendant's psychiatrists, physicians, servants, agents, nurses, orderlies and employees worked in and operated under the auspices of Defendant at all times related to the subject matter of this Complaint.

93. At all times relevant hereto Defendant, the United States, invited veterans to patronize its health care facilities, which held themselves out as capable of

20

rendering proper medical care and services according to accepted medical standards. Defendant had a duty to render proper medical care to its patients.

94. Defendant also had a duty to provide adequate safeguards and guidelines to ensure the proper diagnosis and treatment of Scott Walter Eiswert in accordance with accepted medical standards, which care included, among other things, the services and treatment rendered.

95. Defendant, by its psychiatrists, physicians, servants, agents, nurses, orderlies and employees, whose negligence is imputable to Defendant, during all times relevant hereto negligently, carelessly and recklessly failed to timely diagnose, treat, and properly care for Scott Walter Eiswert. As a result of Defendant's actions, Scott Walter Eiswert did not receive adequate care, which lack of care resulted in his suicide and/or his loss of chance of more favorable outcome.

96. Defendant's negligence through its psychiatrists, physicians, servants, agents, nurses, orderlies and employees constituted a deviation and departure from accepted standard medical procedures and, further, constituted a breach of duty which Defendant owed Scott Walter Eiswert. Defendant's breach of duty was the proximate cause of the suicide of Scott Walter Eiswert and/or his loss of chance of a more favorable outcome.

**97.** Defendant's breaches of duty to Scott Walter Eiswert by way of failure to provide adequate supervision of its psychiatrists, physicians, servants, agents, nurses, orderlies and employees included, but were not limited to, the following:

a. Failure to have properly trained, experienced, knowledgeable and reasonable people in their employ, or associated with it, who were qualified to diagnose

21

and provide proper medical care and treatment to Scott Walter Eiswert;

b. Failure to properly instruct and supervise Defendant's psychiatrists, physicians, servants, agents, nurses, orderlies and employees who provided or should have timely provided medical care and treatment to Scott Walter Eiswert;

c. Failure to properly monitor the activities of its psychiatrists, physicians, servants, agents, nurses, orderlies and employees who were under their control and supervision;

d. Failure to properly evaluate and monitor the performance of their psychiatrists, physicians, servants, agents, nurses, orderlies and employees to ensure that Scott Walter Eiswert was receiving appropriate medical care and treatment as required for his condition;

e. Failure to ensure that Defendant's psychiatrists, physicians, servants, agents, nurses, orderlies and employees properly observed and tested Scott Walter Eiswert at all times Scott Walter Eiswert came into contact with Defendant's psychiatrists, physicians, servants, agents, nurses, orderlies and employees.

f. Failure to use due care in the selection and retention of psychiatrists, physicians, servants, agents, nurses, orderlies and employees who came into contact with Scott Walter Eiswert;

g. Failure to establish and enforce standard procedures to be employed by the psychiatrists, physicians, servants, agents, nurses, orderlies and employees to ensure that individuals who presented to Defendant with similar symptoms as did Scott Walter Eiswert received the proper medical care and treatment their

22

conditions warranted; and

h. Failure to follow and/or promulgate rules, regulations, policies, accepted medical standards and procedures applicable to situations involving a patient presenting to Defendant's Medical Centers with signs and symptoms similar to those presented by Scott Walter Eiswert.

98. As a result of Defendant's negligence, carelessness and recklessness, Scott Walter Eiswert underwent severe stress and eventually committed suicide.

99. As a further result of Defendant's negligence, carelessness, and recklessness, Scott Walter Eiswert, because of his early death, lost thirty-seven years of earning capacity, incurred expenses and sustained severe, permanent, and painful injuries, resulting in premature death, depriving his survivors of the comfort, aid, assistance, services, counseling, guidance, solace and financial contribution that they would have received from him during the remainder of his natural life. In addition, the survivors have incurred expenses for burial and other out-of-pocket costs associated with Scott Walter Eiswert's funeral.

WHEREFORE, Plaintiff Tracy Lynn Reece Eiswert, as Administratrix of the Estate of Scott Walter Eiswert, demands judgment in her favor and against Defendant, the United States, for the above-described injuries and damages, together with interests and costs.

## COUNT IV
### ACTION FOR PAIN AND SUFFERING
### NEGLIGENCE -FAILURE TO TIMELY DIAGNOSE

100. Plaintiffs re-allege and incorporate, as if fully set forth herein, by

23

reference, all of the allegations of paragraphs one (1) through ninety-two (94).

101.     Plaintiff Tracy Lynn Reece Eiswert, as Administratrix of the Estate of Scott Walter Eiswert, brings this action on behalf of the survivors of the decedent.

102.     Defendant the United States, at all times relevant hereto, held the Veterans Administration facilities as facilities qualified to properly diagnose and provide treatment to the decedent, Scott Walter Eiswert.

103.     Defendant acted negligently, carelessly, and recklessly in the treatment of decedent by the following acts and/or omissions:

a.  Failure to perform or order adequate diagnostic testing to determine the exact nature and cause of decedent's condition;

b.  Failure to diagnose decedent's condition or to refer him to a competent psychiatrist and physician who would have been able to make such a diagnosis in light of his medical history;

c.  Failure to consult with a qualified specialist or to refer the decedent to another health care provider capable of correctly diagnosing decedent's condition;

d.  Failure to recognize the significance of the decedent's behavior and condition in spite of his continuing mental condition, of which Defendant was aware or should have been aware:

104.     As a further result of Defendant's negligence, carelessness, recklessness and lack of skill, Scott Walter Eiswert suffered substantial pain and suffering, loss of earning capacity and incurred expenses for medical treatment.

105.     Plaintiff Tracy Lynn Reece Eiswert is entitled to recover for decedent Scott Walter Eiswert's conscious pain and suffering, loss of earning

24

capacity, and any other pecuniary losses which the decedent sustained as a result of his condition and premature death.

WHEREFORE, Plaintiff Tracy Lynn Reece Eiswert demands judgment in her favor and against Defendant, the United States, for the above-described injuries and damages, together with interests and costs.

## COUNT V
## ACTIONS FOR PAIN AND SUFFERING
## NEGLIGENCE - FAILURE TO PROVIDE PROPER TREATMENT

106.    Plaintiffs re-allege and incorporate as if fully set forth herein, by reference, all of the allegations of paragraphs one (1) through ninety-eight (100).

107.    Defendant, the United States, through its psychiatrists, physicians, servants, agents, nurses, orderlies and employees, was negligent, careless, reckless, and failed to exercise proper skill in their professional treatment of Scott Walter Eiswert, in light of his presenting signs.

108.    Defendant's acts and omissions with respect to Scott Walter Eiswert's medical treatment demonstrated that the Defendant's psychiatrists, physicians, servants, agents, nurses, orderlies and employees either lacked the skill, learning and ability to render the care and treatment required by Scott Walter Eiswert's clinical presentation and/or failed to use the skill, learning and ability which they did possess in treating Scott Walter Eiswert.  Defendant's psychiatrists, physicians, servants, agents, nurses, orderlies and employees' negligent acts and/or omissions included, but were not limited to, the following:

a.   Failure to use due care, diligence and skill in treating the decedent in light of

25

his obvious signs and symptoms;

b.  Failure to adequately and properly monitor the decedent's condition;

c.  Failure to ensure that the decedent received the necessary treatment required for his condition, by failing to consult with the proper specialists, such as psychiatrists and qualified physicians, concerning his treatment;

d.  Failure to order proper diagnostic tests of his mental stress and condition;

e.  Failure to conform to the applicable standard of care in the treatment of decedent's presenting signs and symptoms; and

f.  Allowing the decedent's condition to remain untreated for an extended period of time with knowledge that the decedent relied upon the Defendant's psychiatrists, physicians, servants, agents, nurses, orderlies and employees for his medical and psychiatric needs.

109.    As a direct result of Defendant's psychiatrists, physicians, servants, agents, nurses, orderlies and employees' negligence, carelessness, recklessness, and lack of skill, Scott Walter Eiswert was allowed to continue suffering from the mental torture he was enduring and which eventually resulted in his premature death.

110.    As a further result of Defendant's psychiatrists, physicians, servants, agents, nurses, orderlies and employees' negligence, carelessness, recklessness, and lack of skill, Scott Walter Eiswert suffered substantial pain and suffering, loss of earning capacity, and incurred expenses for medical treatment.

111.    Plaintiff Tracy Lynn Reece Eiswert, as Administratrix of the Estate of Scott Walter Eiswert, is entitled to recover for decedent Scott Walter Eiswert's

26

conscious pain and suffering, loss of earning capacity, and any other pecuniary losses which the decedent sustained.

WHEREFORE, Plaintiff Tracy Lynn Reece Eiswert demands judgment in her favor and against Defendant, the United States, for the above-described injuries and damages, together with interests and costs.

**COUNT VI**
**ACTION FOR PAIN AND SUFFERING**
**NEGLIGENT SUPERVISION AND MONITORING**
**OF HEALTH CARE PROVIDERS**

112.     Plaintiffs re-allege and incorporate, as if fully set forth herein, by reference, all of the allegations of paragraphs one (1) through one hundred and four (105).

113.     Veteran Administration psychiatrists, physicians, servants, agents, nurses, orderlies and employees worked in and operated under the auspices of Defendant, the United States.

114.     At all times relevant hereto, Defendant invited United States veterans to patronize its Veterans Administration facilities, and Defendant's Veterans Administration health care facilities held themselves out as rendering proper medical care and services according to accepted medical standards.  The Veterans Administration had a duty to render proper medical care to all veterans residing within its jurisdiction who qualified for such services, one of whom was Scott Walter Eiswert.

115.     The Veterans Administration had a duty to provide adequate

safeguards and guidelines to ensure the proper diagnosis and treatment of Scott
Walter Eiswert in accordance with accepted medical standards, which care included,
among other things, the services and treatment rendered by Veteran Administration
psychiatrists, physicians, servants, agents, nurses, orderlies and employees.

116.    Defendant, the United States, via VA's psychiatrists, physicians,
servants, agents, nurses, and orderlies, whose negligence is imputable to Defendant,
during all times relevant hereto negligently, carelessly and recklessly failed to timely
diagnose, observe, evaluate, counsel, treat, and properly care for Scott Walter
Eiswert.  As a result of the Veterans Administration's psychiatrists, physicians,
servants, agents, nurses, orderlies and/or employees' negligence, Scott Walter
Eiswert was deprived of proper care, observation, evaluation, treatment, which
resulted in disastrous results and eventually in Scott Walter Eiswert's suicide.

117.    Veterans Administration's psychiatrists, physicians, servants,
agents, nurses, orderlies and employees' negligence constituted a deviation and
departure from accepted standard medical procedures and, further, constituted a
breach of duty which the Veterans Administration owed to Scott Walter Eiswert and
which was the proximate cause of Scott Walter Eiswert's suicide and/or his loss of
chance of a more favorable outcome, as well as his unnecessary pain and suffering.

118.    Defendant's failure to provide adequate supervision of their
agency the Veterans Administration, its psychiatrists, physicians, servants, agents,
nurses, orderlies and employees included, but were not limited to, the following:

a.    Failure to have properly trained, experienced, knowledgeable and reasonable
people in its employ, associated with it, or retained temporarily for specific

28

tasks, who were qualified to diagnose and provide proper medical care and treatment to Scott Walter Eiswert;

b.  Failure to properly instruct and supervise the Veterans Administration and its psychiatrists, physicians, servants, agents, nurses, orderlies and employees who provided or failed to provide medical care and treatment to Scott Walter Eiswert in his visits to the Veterans Administration facilities;

c.  Failure to properly monitor the activities of the Veterans Administration and its psychiatrists, physicians, servants, agents, nurses, orderlies and/or employees who were under their control and supervision;

d.  Failure to properly evaluate and monitor the performance of the Veterans Administration and its psychiatrists, physicians, servants, agents, nurses, orderlies and employees to ensure that Scott Walter Eiswert was receiving appropriate medical care and treatment as required for his condition;

e.  Failure to ensure that the Veterans Administration and its psychiatrists, physicians, servants, agents, nurses, orderlies and employees properly observed, evaluated, counseled and treated Scott Walter Eiswert during his contacts with the Veterans Administration and its psychiatrists, physicians, servants, agents, nurses, orderlies and employees;

f.  Failure to use due care in the selection and retention of psychiatrists, physicians, servants, agents, nurses, orderlies and employees who were employed by and/or associated with the Veterans Administration;

g.  Failure to establish and enforce standard procedures to be employed by the psychiatrists, physicians, servants, agents, nurses, orderlies and employees of

29

the Veterans Administration which would ensure that individuals presenting to the Veterans Administration with symptoms and medical histories similar to those exhibited by Scott Walter Eiswert on July 28, 2006 and thereafter would receive the proper medical care and treatment warranted by their conditions; and

h. Failure to follow and/or promulgate rules, regulations, policies, accepted medical standards and procedures applicable to situations involving a patient presenting with symptoms similar to Scott Walter Eiswert's symptoms exhibited on July 28, 2006 and thereafter.

119.     As a result of Defendant's negligence, carelessness and recklessness, Scott Walter Eiswert failed to be adequately observed, evaluated, counseled and treated at the Veterans Administration facilities, leading to extensive pain and suffering, accompanied by disastrous mental and physical results.

120.     As a further result of Defendant's negligence, carelessness, and recklessness, Scott Walter Eiswert suffered pain and suffering, loss of earning capacity, and incurred expenses for medical treatment.

121.     Plaintiff Tracy Lynn Reece Eiswert is entitled to recover for decedent Scott Walter Eiswert for conscious pain and suffering, loss of earning capacity, and any other pecuniary losses which the decedent sustained.

WHEREFORE, Plaintiff Tracy Lynn Reece Eiswert demands judgment in his favor and against Defendant, the United States, for the above-described injuries and damages, together with interests and costs.

30

**LOSS OF CONSORTIUM**
**TRACY LYNN REECE EISWERT ON HER OWN BEHALF AND ON BEHALF**
**OF HER MINOR DAUGHTERS, U. E. AND B. E.,**
**AND CHRISTINA REECE ON HER OWN BEHALF**

122.     Plaintiffs re-allege and incorporate as if fully set forth herein, by reference, all of the allegations of paragraphs one (1) through one hundred and fourteen (115).

123.     At all times relevant hereto, Scott Walter Eiswert was married to Tracy Lynn Eiswert and lived with her and the two children from their marriage, U. E. and B. E..

124.     At all times relevant hereto Christina Reece lived with her natural mother and with Scott Walter Eiswert on weekends, holidays and summers, and Scott Walter Eiswert treated and cared for Christina as if she were his own child by blood.

125.     As a direct result of decedent's death, his spouse Tracy Lynn Reece Eiswert, her natural daughters U. E. and B. E. Eiswert and Christina Reece, have lost the comfort, protection and society of Scott Walter Eiswert, their adult spouse, father and stepfather, respectively, who was a person of good habits and a loving and devoted spouse, father and stepfather to his spouse, children and stepchild.

126.     Tracy Lynn Reece Eiswert, U. E., B. E. and Christina Reece have lost the services of Scott Walter Eiswert, their adult spouse, father and step-father, in assisting in the care of their family, as well as future earnings.

127.     By reason of the decedent's death and as a result of the wrongful and negligent acts of Defendant, Tracy Lynn Reece Eiswert, U. E., B. E. and

31

Christina Reece have been deprived of Scott Walter Eiswert's support in a sum to be established at trial but which was included in the sum certain filed with the Defendant in Form-95.

WHEREFORE Plaintiffs Tracy Lynn Eiswert on her own behalf and on behalf of her children U. E. and B. E., and Christina Reece demand judgment against the Defendant in a sum to be established at trial, together with costs of suit, attorneys' fees, and such other and further relief as the Court may deem proper.

## VIII.  DEMAND

**WHEREFORE,** Plaintiffs demand overall judgment against Defendant in the sum certain specified in FORM 95 filed with Defendant on April 20, 2010 together with costs of suit, attorneys' fees and such other and further relief as the Court may deem proper.

Dated:  October 11, 2011

By Attorneys for Plaintiffs,

*s/ D. Bruce Shine*
D. Bruce Shine, Esq.
Law Office of D. Bruce Shine
433 East Center Street
Kingsport, TN 37660-4858
Tel: 423-246-8433
Fax:423-246-7464

Electronic Mail:  bruceshine@chartertn.net




*s/J. Gerard Stranch IV*
J. Gerard Stranch IV, Esq.
Branstetter Stanch & Jennings PLLC
227 Second Avenue North, Fourth Floor
Nashville, TN 37201-1631
Tel:  615-254-8801
Fax:  615-255-5419
Electronic Mail: gerards@branstetterlaw.com




*s/Cristobal Bonifaz*
Cristóbal Bonifaz,  Esquire, MA BBO 548-405
John C. Bonifaz, Esquire, MA BBO 562-478
LAW OFFICES OF CRISTOBAL BONIFAZ
180 Maple Street
P.O. Box 180
Conway, Massachusetts 01341
Tel:  413-369-4263
Fax:  413-253-7475
Electronic Mail:  cbonifaz@comcast.net